FILED

2006 Dec-19 AM 11:44
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **MATTIE LONG, as personal representative of Annie G. Holiday, deceased,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV 06-S-704-NW** |
| | ) | |
| **COLBERT COUNTY SHERIFF'S DEPARTMENT,** *et al.*, | ) ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This civil rights action, filed by Mattie Long, in her representative capacity as personal representative of Annie G. Holiday, deceased,[1] is before the court on four motions to dismiss.[2] The motions are largely direct attacks upon, or motivated by, the

---

[1] This action, as filed, was premised upon Alabama's wrongful death statute, Ala. Code § 6-5-410 (1975), a law that empowers "[a] personal representative" to bring an action for a wrongful act that "caused" the death of "his testator or intestate." *Id*. An action by an "estate" as such is a totally different sort of proceeding — one that is not contemplated or permitted under Ala. Code § 6-5-410. *See Briancliff Nursing Home, Inc. v. Turcotte*, 894 So.2d 661, 671 (Ala. 2004) (explaining that "the right to bring a wrongful death action accrues to and belongs to the personal representative of a decedent, not to the estate of the decedent"). Ignoring this distinction, plaintiff's attorney styled the present case "*Estate of Anne G. Holiday v. Colbert County Sheriff's Department, et al*." Doc. no. 1 (Notice of Removal), Ex. A (State Court Complaint). Since the proper person, Mattie Long, is actually the plaintiff, no substantive consequence flows from this error in description, except that the court will direct all future filings to be captioned correctly.

[2] Doc. no. 2 (Motion to Dismiss on Behalf of Dale Holley and Tommy Shea); doc. no. 4 (Motion to Dismiss on Behalf of Ronnie May); doc. no. 6 (Motion to Dismiss on Behalf of the Colbert County Commission); doc. no. 8 (Motion to Dismiss on Behalf of the Colbert County Sheriff's Department).

virtually inscrutable nature of plaintiff's complaint.  In the discussion that follows, this court pares the potential causes of action and concludes that plaintiff must file a more definite statement of her remaining claims.

## PART ONE

### *Standard of Review*

Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).  The courts have been careful to distinguish this modern "notice pleading" regime from the complex (and now outmoded) common law pleading system.  In particular, the Eleventh Circuit has noted that the Federal Rules do not require that the pleader allege a "specific fact" to cover every element, or allege "with precision" each element of a claim.  *See Roe v. Aware Woman Center for Choice, Inc*., 253 F.3d 678, 683 (11th Cir. 2001).  The goal is simply to produce a complaint "contain[ing] either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id*.       Thus, when ruling upon a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true, and construe them in the light most favorable to the non-moving party.  *Hishon v. King &*

*Spalding*, 467 U.S. 69, 73 (1984). *See also*, *e.g.*, *Brooks v. Blue Cross & Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997). Utilization of this technique ensures that a plaintiff does not suffer a dismissal of her claims "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a particular] claim which would entitle [her] to relief." *Conley*, 355 U.S. at 45-46 (alterations added).

Even so, pleadings must be "something more than an ingenious academic exercise in the conceivable." *Marsh v. Butler County*, 268 F.3d 1014, 1037 (11th Cir. 2001) (*en banc*). That admonition is especially true here, where the claims are based upon 42 U.S.C. § 1983.[3] While "the usual pleading requirements of Rule 8(a) of the

---

[3] Plaintiff's complaint never explicitly invokes § 1983, but given that her claims are all constitutional causes of action against various state agents and entities, that section is indubitably applicable. Section 1983 provides a means for obtaining monetary compensation from state or municipal governmental entities or officials whose conduct under color of state law deprives a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes. In pertinent part, the statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

Federal Rules of Civil Procedure" apply to § 1983 claims asserted against municipal government entities, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), a plaintiff still must, at the very least, put the local government entity *on notice* of the particular custom or policy that is alleged to have caused the injury. *See id.* at 168.

In the context of government officials sued personally, "in their individual capacities," under § 1983, a more stringent "heightened pleading" standard applies. *See*, *e.g.*, *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) ("In examining the factual allegations in the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity."); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (noting that "heightened specificity is required in civil rights actions against public officials who may be entitled to qualified immunity"). *See also Swann v. Southern Health Partners*, *Inc.*, 338 F.3d 834, 838 (11th Cir. 2004) (noting that "the heightened pleading standard is only applicable in § 1983 suits against individuals to whom qualified immunity is available").[4] In such circumstances, "[t]he complaint must

---

[4] The doctrine of qualified immunity provides "complete protection for governmental officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)), *vacated on other grounds*, 536 U.S. 953 (2002), *reinstated on remand*, 323 F.3d 950 (2003).

allege the relevant facts with some specificity. [M]ore than mere conclusory notice pleading is required. . . . [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Maldonado v. Snead*, 168 Fed. Appx. 373, 379-380 (11th Cir. 2006) (alterations in original) (internal quotations and citations omitted).

PART TWO

*Factual and Procedural Background*

This case involves the shooting death of Annie G. Holiday on March 12, 2004, an event that occurred at her home in Colbert County, Alabama.[5] At this early stage of the case, this court's only information concerning the circumstances of that death comes from plaintiff's rather abbreviated complaint. As will be seen below, the allegations of her complaint are difficult to interpret, primarily because the body of that pleading does not differentiate between the persons or entities being sued. Indeed, the individual defendants are not identified by name at any place other than in the caption of the complaint itself.

**A.    Factual Allegations**

The complaint alleges that, on the day in question, the Colbert County Sheriff's office received a telephone call from some unidentified person who stated that an

---

[5] Doc. no. 1, Ex. A, ¶¶ 1, 3.

unknown individual had discharged a firearm in the area of the decedent's home.[6]  In

response to that call, some number of law enforcement officers were dispatched to the

scene to investigate.[7]  The pleading does not specifically state who was dispatched

to the scene, but the only two deputies named as defendants in the caption are Dale

Holley and Tommy Shea.[8]  Ronnie May, the Colbert County Sheriff, also is named

as a defendant, but nothing in the body of the complaint suggests that he accompanied

his deputies on this particular call.[9]

   In any event, whoever arrived on the scene — presumably Deputies Holley and

Shea — allegedly entered onto decedent's property to investigate the reported

disturbance.[10]  Apparently unable to locate a suspect, the deputies called out to

decedent, who was inside her house, but received no response.[11]  Thereupon, for

reasons that are not articulated in the complaint, the deputies allegedly "proceeded

to forcefully knock at the door to [decedent's] home and [again] failed to get a

response."[12]  While plaintiff claims that decedent never threatened the deputies or

---

[6] *Id*. at ¶ 1.

[7] *Id*.

[8] *Id*. at Caption.  Indeed, the body of the complaint simply alleges that "Defendant" arrived on the scene.  *E.g.*, *id.* at ¶ 1.  As will be seen below, this case involves five separate defendants, two of which are entities not capable of "arriving" anywhere.

[9] *See id*.

[10] *Id*.

[11] *See* doc. no. 1, Ex. A, ¶¶ 1, 3.

[12] *Id*. at ¶ 3.

fired upon them, for some unexplained reason they "withdrew from the porch to the cover [of a patrol car]."[13]  Then, "without provocation from Plaintiff's decedent," the deputies allegedly "drew their weapons . . . and proceeded to open fire on the home."[14]  After discharging an unstated number of rounds, the deputies are said to have entered decedent's home and found her "wounded from a gunshot," an injury that subsequently caused her death.[15]

## B.    Claims for Relief

Perceiving this conduct to be violative of established constitutional standards, Mattie Long commenced this action in her representative capacity in the Circuit Court of Colbert County, Alabama, and based her claims on the state's wrongful death statute, Ala. Code § 6-5-410.[16]  The action subsequently was removed to this court by joint action of all defendants.[17]

---

[13] *Id*. at ¶¶ 3-4.

[14] *Id*. at ¶ 3.

[15] *Id*.  The complaint does not give any hints as to whether decedent was a suspect, the actual target, or merely an innocent bystander who was struck by a stray bullet.

[16] Doc. no. 1, Ex. A, Count I.  Alabama's wrongful death statute is the proper vehicle for bringing these constitutional claims because, standing alone, 42 U.S.C. § 1983 does not provide a vicarious or derivative right of action where the victim dies.  *See Carringer v. Rodgers*, 331 F.3d 844, 849 (11th Cir. 2003) (describing "the gap left by federal law in § 1983 where death result[s] from constitutional violations").  To ensure effective redress for constitutional offenses, however, the Eleventh Circuit has held that 42 U.S.C. § 1988 points the courts to state wrongful death and survival statutes.  *Id*. at 850.  *See also generally* Wayne Morse, *Death Actions for Federal Rights Violations in Alabama*, 29 Cumb. L. Rev. 11, 13 (1998).

[17] *See* doc. no. 1 (Notice of Removal).

Plaintiff demands $250,000 in punitive damages against five defendants:  (1) Ronnie May, the Sheriff of Colbert County; (2) Deputy Sheriff Dale Holley; (3) Deputy Sheriff Tommy Shea; (4) the Colbert County Sheriff's Department; and (5) the Colbert County Commission.[18]  No indication is made as to whether the human defendants are sued in their official or individual capacities.  Moreover, as alluded to above, the body of the complaint does not distinguish between the parties sued, with the exception of a few vague references to "defendant's deputies."[19]

Substantively, the complaint purports to state two claims, each in a separate count.  Count I asserts a violation of the Fourth Amendment to the United States Constitution.[20]  Since the complaint does not actually explicate the *basis* for the Fourth Amendment violation, the court can only speculate that the alleged violation is two-fold:  an unreasonable "search" of decedent's property, and excessive force in effecting a "seizure" of decedent.  *See*, *e.g.*, *Graham v. Conner*, 490 U.S. 386, 388, 394-395 (1989) (holding that the Fourth Amendment's prohibition on unreasonable seizures encompasses the right to be free from the use of excessive force in the course of an arrest).  Count II asserts that decedent was deprived of due process under the

---

[18] *Id*. at Ex. A, Caption; *id*. at ¶ 9.

[19] *Id*. at ¶¶ 3, 6, 7.

[20] *Id*. at ¶ 2.

Fifth Amendment,[21] though obviously the Fourteenth Amendment is the enactment that is potentially invoked on these facts.  *See*, *e.g.*, *Green v. Freeman*, 434 F. Supp. 2d 1172, 1176 (M.D. Ala. 2005) ("The Fifth Amendment Due Process Clause serves as a limitation on the power of the *federal* government; the Due Process Clause of the Fourteenth Amendment applies to States and municipalities.") (emphasis in original). Either way, this due process claim appears to be nothing more than a different theory of recovery for the use of excessive force that arguably serves as a basis of Count I.[22]

In response to these allegations, each defendant has filed a motion to dismiss. The court will address each of these motions in turn.

## PART THREE

### *The Colbert County Sheriff's Department's Motion to Dismiss*

The simplest motion of the bunch may be the one filed by the Colbert County Sheriff's Department.  As counsel for the Sheriff's Department aptly point out in their brief, "[u]nder Alabama law, a county sheriff's department lacks the capacity to be sued [under § 1983]."  *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (citing *White v. Birch*, 582 So.2d 1085, 1087 (Ala. 1991)).  *See also Ex parte Haralson*, 853 So.2d 928, 931 (Ala. 2001) ("It is clear under Alabama law that the sheriff's

---

[21] *Id*. at ¶ 6.

[22] *See id*. at ¶ 7 (alleging simply that the deputies "entered onto decedent's property and remained to use unlawfully excessive force exceeding their authority").

department is not a legal entity subject to suit.") (citing *King v. Colbert County*, 620 So.2d 623, 626 (Ala. 1993)).  Accordingly, the Colbert County Sheriff's Department must be dismissed as a party to this action and, in fact, probably should have been voluntarily dismissed by plaintiff.  *See Dean*, 951 F.2d at 1215; *see also Lovelace v. Dekalb Central Probation*, 144 Fed. Appx. 793, 795 (11th Cir. 2005) (reaffirming *Dean*).

## PART FOUR

### *The Colbert County Commission's Motion to Dismiss*

The Colbert County Commission's multi-faceted argument for dismissal is slightly more complicated.  One of the more straightforward grounds turns on the fact that a municipality (or, in this instance, a county government) "is immune from punitive damages under 42 U.S.C. § 1983."  *City of Newport v. Fact Concerts*, *Inc.*, 453 U.S. 247, 271 (1981).  *See also* 42 U.S.C. § 1981a(1)(b).  According to the Colbert County Commission, since it is exempt from punitive damages, and since the complaint only requests punitive damages, it should be dismissed as a party. Although the argument is superficially tempting, the court is not prepared to dismiss on this basis:  there is at least some Alabama authority permitting an award of nominal damages in wrongful death actions where punitive relief cannot be recovered.  *See generally* Marsh & Gamble, *Alabama Law of Damages* § 37:9 (5th

-10-

ed. 2006).

On the other hand, the Commission correctly points out that plaintiff's claims against it appear to be predicated on a theory of *respondeat superior*. The complaint contains no allegations whatsoever that the acts complained of were the result of any policy, custom, or other directive of the Colbert County Commission, county official, or otherwise. Rather, in her response brief, plaintiff's counsel confirms solitary reliance on vicarious liability:

> The Colbert County Commission, The Colbert County Sheriff's Department and Sheriff May are the employer's [*sic*] of Deput[ies] Shea and Holley. Without extensive further details, Plaintiff has shown that the immunity claimed by the deputies can and has been disputed. Further, if such immunity is breached against the deputies it can be held that it can also be breached regarding the other parties.[23]

Plaintiff's counsel is not correct. The Supreme Court held long ago, in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), that a municipality (and, by extension, other local governmental entities, such as Colbert County, Alabama) cannot be held liable under § 1983 on a theory of *respondeat superior*. In other words, a local government entity "cannot be held liable solely because it employs a tortfeasor." *Id*. at 691. Instead, such governmental entities may be held accountable in damages for the conduct of a peace officer only upon a showing that

---

[23] Doc. no. 10 (Plaintiff's Response in Opposition to Defendants' Motions to Dismiss), p. 3.

execution of the local governmental entity's official "policy" or "custom" effectively was the cause of the injury at issue. *Id*. at 694. *See also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (holding that "a municipality can be found liable under § 1983 only where the municipality itself *causes* the constitutional violation at issue") (emphasis supplied). Stated somewhat differently, "[a] local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'" *Turquitt v. Jefferson County*, 137 F.3d 1285, 1287 (11th Cir. 1998) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986)).[24]

Here, plaintiff's complaint does not allege a single act or omission, nor any policy or custom, that could conceivably render the Colbert County Commission liable under § 1983. Not to belabor the point, but plaintiff does not even *mention or allude to* the Commission in the body of the pleading. *Cf. Dorsey v. Wallace*, 134 F. Supp. 2d 1364, 1369 (N.D. Ga. 2000) ("The instant Complaint . . . fail[s] to provide any allegation, legal or factual, that Atlanta officials were aware of past or present police misconduct. There has been no showing of prior complaints or lawsuits

---

[24] *See generally* Kenneth L. Lewis, *Section 1983: A Matter of Policy — Current Overview of Municipal Liability,* 70 Mich. B.J. 556 (1991) ("Thus, municipal liability attaches only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.").

against Atlanta for this type of custom or policy. Thus, the plaintiffs have failed to plead sufficient facts that if proven would entitle them to relief from Atlanta.") (internal citation omitted).

Critically, an amendment to the complaint to include reference to a specific policy of the Colbert County Commission that allegedly precipitated the shooting would not save plaintiff's claims against that entity. That is because, under settled Alabama law, a county commission has no authority "to promulgate work rules for the employees of the sheriff's office, especially the sheriff's deputies." *Lockridge v. Etowah County Commission*, 460 So.2d 1361, 1363 (Ala. Civ. App. 1984). *See also Terry v. Cook*, 866 F.3d 373, 379 (11th Cir. 1989) (holding that there is "no authority in Alabama law granting the county commission the authority to hire and fire deputy sheriffs"); *Gaines v. Choctaw County Commission*, 242 F. Supp. 2d 1153, 1159 (S.D. Ala. 2003) (holding that, under Alabama law, "the [c]ounty [commission] is not responsible for training or supervising the Sheriff or his employees").

Moreover, "the 'governing body' of the counties — which in every Alabama county is the county commission — cannot instruct the sheriff how to ferret out crime, how to arrest a criminal, or how to secure evidence of a crime." *McMillian v. Monroe County*, 520 U.S. 781, 790 (1997) (internal citations omitted).

What all of this means is that a county commission is not a "policymaker" for

that county's sheriff, either with respect to law enforcement practices and procedures, or with respect to the hiring and supervision of deputies.  Likewise, as counsel for defendant aptly explained,

> [w]hile a county may be held liable for a constitutional violation caused by a policy or custom created by an official 'whose edicts or acts may fairly be said to represent official policy,' *Monell*, 436 U.S. at 694 . . . . Alabama law, as interpreted by the United States Supreme Court, clearly establishes that sheriff's deputies are not county policymakers, but are the responsibility of the Sheriff, and that the Sheriff acts for the state, and not for the county.  *See McMillian v. Monroe County*, *Ala.*, 520 U.S. 781, 788 (1997) (holding that an Alabama Sheriff "represents the State of Alabama and is therefore not a county policymaker.").[25]

Without the power to promulgate law enforcement or other supervisory policies for the Colbert County Sheriff and his deputies, the Colbert County Commission cannot be held responsible under § 1983 for constitutional violations allegedly perpetrated by those law enforcement officials.  *See McMillian*, 520 U.S. at 790.  Accordingly, the Colbert County Commission's motion to dismiss all claims against it will be granted.  In light of this disposition, the other arguments in the motion need not be addressed.

## PART FIVE

### *The Sheriff's and Deputy Sheriffs' Motions to Dismiss*

Having dismissed all claims asserted against two defendants to this action, the

---

[25] Doc. no. 7 (Colbert County Commission's Brief in Support of Dismissal), p. 8.

court now must address the viability of plaintiff's claims against the remaining three parties. Again, these defendants rely on numerous grounds in arguing for dismissal. Below, the court finds that some claims against these parties are potentially viable, but only *if* they are refined through an amended pleading, while others are non-starters in any event.

## A.    Official Capacity Claims

One of the most frustrating aspects of the complaint in this case is plaintiff's failure to indicate whether Sheriff Ronnie May and Deputies Dale Holley and Tommy Shea are sued in their individual or official capacities. Plaintiff's attorney clearly does not comprehend the distinction, as evidenced in part by the fact that she has not even bothered to respond to the arguments for dismissal that are predicated upon this nuance. For counsel's edification:

> Personal [or individual]-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

-15-

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (emphasis in original) (citations,

footnotes, and internal quotation marks omitted).  *See also Colvin v. McDougall*, 62

F.3d 1316, 1318 (11th Cir. 1995) ("We stress as much as we can that the difference

between an official capacity suit and an individual capacity suit is a big difference.").

Explicating the capacity in which a state government official is sued is

absolutely critical because of the Eleventh Amendment to the United States

Constitution.[26]   The Eleventh Amendment "prohibits suits against state officials

where the state is, in fact, the real party in interest."  *Summit Medical Associates*, *P.C.*

*v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999).  As should be clear from the quoted

excerpt from the Supreme Court's opinion in *Graham* contained in the immediate, the

state is the "real party in interest" where one of its agents or officials is sued in their

official capacity.  *See*, *e.g.*, *McMillian*, 520 U.S. at 785 n.2 (explaining that a suit

against a government officer in his official capacity is the functional equivalent of a

_____

[26] Although the Supreme Court's holdings in the area at times cast doubt on the importance
of the actual *language* of the Eleventh Amendment, for what it is worth, that enactment provides as
follows:

> The Judicial power of the United States shall not be construed to extend to
> any suit in law or equity, commenced or prosecuted against one of the United States
> by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  *See also*, *e.g.*, *Board of Trustees of the University of Alabama v. Garrett*,
531 U.S. 356, 363 (2001) (noting that the Supreme Court long ago "extended the Amendment's
applicability to suits by citizens against their own States").

suit against the government entity the officer serves).  In Alabama, sheriffs and their

deputies are arms of *state* government, not of county government.  *See*, *e.g.*, *id*. at 793

("Alabama sheriffs, when executing their law enforcement duties, represent the State

of Alabama, not their counties.").

Therefore, if Sheriff Ronnie May and his deputies are sued in their *official*

capacities, the claims against them are due to be dismissed.[27]  *Dean v. Barber*, 951

F.2d 1210, 1215 n.5 (11th Cir. 1992) ("We also recognize that Dean's suit, to the

extent that it attempts to hold Sheriff Bailey or other members of the Jefferson County

Sheriff's Department liable in their official capacity under section 1983, is barred

because the sheriffs are employees of the State of Alabama."); *Hester v. Lowndes*

*County Commission*, No. 2:06-CV-572-WHA, 2006 WL 2547430, at * 2 (M.D. Ala.

Sept. 1, 2006) (noting that "a deputy sheriff receives the same privilege of sovereign

immunity as a sheriff").  The problem here, of course, is that the complaint does not

specify the capacity in which these defendants are sued.  *Cf. Colvin*, 62 F.3d at 1318

(cautioning that "plaintiffs have a duty to make plain who they are suing [and in what

capacity] and to do so well before trial").

Generally, when determining the capacity in which a governmental employee

---

[27] The same result would be achieved by applying the longstanding rule that a state official sued in his or her official capacity is not a "person" for purposes of liability under § 1983.  *See*, *e.g.*, *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

is sued, the court looks "at the complaint and the course of proceedings." *Id.* at 1317.
The "course of proceedings" in the present case is not lengthy, and the only real
evidence of the capacity intended is the complaint's caption, which names "SHERRIF
[*sic*] RONNIE MAY" without further elucidation, and lists the deputies by name
only, with no reference to their titles.[28] *Contra id.* (finding that a lawsuit was against
a sheriff in his official capacity *only* where the complaint's caption listed the
defendant as "John J. McDougall, as Sheriff of the Lee County," and where plaintiff
*admitted* that the defendant was sued in his official capacity).  In view of the situation
here, the court holds that, *at most*, plaintiff has sued Sheriff Ronnie May and his
deputies in *both* their official and individual capacities.  Accordingly, that aspect of
the motion seeking to have the official capacity claims dismissed will be granted.  *See
Dean*, 951 F.2d at 1215 n.5.  The fate of the individual capacity claims is the subject
of the next section of this opinion.

**B.     Individual Capacity Claims**

        Anticipating the court's conclusion that the complaint states individual capacity
claims against them, Sheriff Ronnie May and Deputies Dale Holley and Tommy Shea
also have moved to dismiss on several other grounds.  The court will discuss each
ground in turn.

---

[28] Doc. no. 1, Ex. A, Caption (all capital lettering in original).

### 1.      Non-fatal constitutional violations

Both Sheriff Ronnie May and the deputies ask the court to dismiss any claims in the complaint to the extent that they purport to allege constitutional violations that did not result in decedent's *death*.  The theory is that, since Alabama's wrongful death statute "is a remedy for the infliction of death only," *King v. National Spa & Pool Institute*, 607 So. 2d 1241, 1247 (Ala. 1992), relief cannot be granted based upon the allegations that the deputies "unlawfully remained on [decedent's] property and attempted to draw [d]ecedent from her place of abode," or "unlawfully proceeded to enter the decedent's home after firing upon her."[29]

Because plaintiff's statement of the Fourth Amendment violation does not indicate whether that count is based upon an unconstitutional search or an unconstitutional seizure, the court cannot say with confidence whether these particular allegations are merely background facts, or affirmative statements of actionable violations.  Nonetheless, it remains true that under Alabama's wrongful death law, plaintiff's suit must focus on torts "whereby the death of [her] testator or intestate was caused."  Ala. Code § 6-5-410.  *See also*, *e.g.*, *Missildine v. City of Montgomery*, 907 F. Supp. 1501, 1505 (M.D. Ala. 1995) ("To be actionable under Alabama's wrongful death statute, the tort must have been the cause of death.").

---

[29] *Id*. at ¶¶ 1, 3.

-19-

Clearly, any allegedly unlawful search did not cause decedent's death:  so, to the extent that plaintiff seeks to vindicate non-fatal constitutional torts, those claims must be dismissed with prejudice.

### 2.    Individual and/or supervisory liability for decedent's death

All three law enforcement defendants also contend that they cannot be held liable under § 1983 because there is no allegation that *they* directly perpetrated the alleged violations or are responsible in some other (*e.g.*, supervisory) capacity.  *See Swint v. City of Wadley*, 51 F.3d 988, 999 (11th Cir. 1995) (noting the requirement of an "affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation").  As discussed below, they make a valid point but, at this time, the prudent remedy is not dismissal.

### a.    Sheriff Ronnie May

Sheriff Ronnie May is not even mentioned in the complaint, either by name or by title.  It appears, however, that he was not present when the alleged shooting took place, and certainly did not fire at decedent.  Thus, it is plain that no liability could attach as a result of his personal participation in decedent's alleged killing.  Moreover, the Sheriff is not vicariously responsible for the acts of his deputies merely because he is their employer.  *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) ("'Supervisory officials are not liable under section 1983 on the basis of

respondeat superior or vicarious liability.'") (quoting *Hardin v. Hayes*, 957 F.2d 845, 849 (11th Cir. 1992)).

While plaintiff could conceivably seek to recover from the Sheriff under a theory of supervisory liability, *see Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), the complaint, as written, contains no facts that would give rise to such a claim. Plaintiff does not, for example, allege that the Sheriff failed to train his deputies in a way that led to decedent's death,[30] that he acted with deliberate indifference toward decedent's rights in hiring unfit deputies,[31] or that he promulgated some policy, or tolerated some custom, that resulted in decedent's shooting.[32] The pleading utilized in this case gives new (and more literal) meaning to the phrase "failure to state a claim." *See* Fed. R. Civ. P. 12(b)(6). Moreover, the complete absence of factual allegations renders impossible the court's task of deciding the qualified immunity question, and blatantly defies the Eleventh Circuit's heightened pleading requirement for civil rights actions. *See, e.g.*, *Maldonado*, 168 Fed. Appx. at 379-380.

Nevertheless, the court is not prepared to dismiss the Sheriff from this lawsuit

---

[30] *See generally City of Canton*, 489 U.S. 378.

[31] *See generally Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997).

[32] *See generally Cottone*, 326 F.3d 1352.

at this time.  Instead, plaintiff will be permitted to file an amended complaint that explicitly details the nature of the claim(s) against Sheriff Ronnie May, *if any*, as well as all supporting facts.[33]   If the amendment does not resolve the deficiencies highlighted herein, or presents new problems, the Sheriff may raise those issues through another motion.

### b.      Deputies Dale Holley and Tommy Shea

Unlike the Sheriff, Deputies Dale Holley and Tommy Shea *are* mentioned at several places in the complaint, after a fashion.  At one critical point, plaintiff makes the somewhat impossible allegation that "[d]efendant deputies" fired "*a* gunshot" that struck and killed decedent.[34]   Still, the deputies are not referred to by *name* — and plaintiff does not specify *which* deputy is believed to have fired the fatal shot.  This lack of information led the deputies to move for a dismissal on the ground that there are no allegations that either one of them did anything (*e.g.*, pull a trigger, fail to instruct a subordinate not to pull a trigger) to effect decedent's death.

Plaintiff's reliance on collective references to the deputies is perplexing, and

---

[33] Of course, after reviewing the applicable law, plaintiff's counsel may determine that there is no evidence to support a claim against the Sheriff, in which case a voluntary dismissal would be in order.  The court expresses no opinion as to whether the evidence dictates a dismissal, having not been privy to that information.  Plaintiff's counsel is *strongly reminded*, however, that vicarious liability is *not* recognized under § 1983.

[34] *See* doc. no. 1, Ex. A, ¶ 3 (emphasis supplied).

it makes the court's task very difficult.  On the one hand, clearly both deputies did not *collectively* fire a *single* gunshot.  *Cf. Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) ("The fact that the defendants are accused collectively does not render the complaint deficient . . . . [where it can] be fairly read to aver that all defendants are responsible for the alleged conduct.").  On the other hand, it could be that plaintiff is not aware of which deputy fired the shot, and intends to use discovery to uncover that information.  The court perceives nothing objectionable about this strategy; although, if the evidence shows at any point in time that one deputy did not fire the bullet that struck decedent, that would certainly be a matter to be addressed in a summary judgment motion.  The question is:  what to do until then?

One option — advocated by the deputies — is dismissal of the case for failure to state a claim upon which relief can be granted.  The court is not prepared to take this action.  Plaintiff may well have a valid claim against one or both deputies, and it defies logic to dismiss *both* of them, without seeing any evidence, simply because *one* of them *may* not be responsible.  Another option — this one is plaintiff's — is to simply allow the claims to proceed without further refinement.  Obviously, this is not a realistic solution, either.  If plaintiff intended to state a supervisory claim

against one of the deputies, at this point she has not articulated it.[35]  If plaintiff only

seeks judgment against the deputy who directly caused her decedent's death, she has

nonetheless failed to include sufficient factual information in her complaint to permit

the court to decide whether the deputies are due qualified immunity, as they allege in

their motion to dismiss.

    As observed above, the standard for pleading in cases implicating a qualified

immunity defense is "heightened."  *Gonzalez*, 325 F.3d at 1235.  This is because the

analysis of that defense requires "careful examination of the facts at hand."  *Omar ex*

*rel. Cannon v. Lindsey*, 334 F.3d 1246, 1248 (11th Cir. 2003).   The present

complaint, however, appears to omit potentially critical details.  Why, for instance,

did the deputies "withdr[a]w from the porch to the cover of the vehicle belonging to

the Colbert County Sheriff's Department" if decedent "did not threaten" them?[36]  Was

another suspect in the area currently firing upon or otherwise threatening the

deputies?  Was *someone else* within decedent's home threatening them?  If not, why

did the deputies see fit to fire upon decedent's house?  Were their alleged actions

truly so brazen as to be without any logical explanation at all, or is plaintiff merely

withholding that information?   Regardless of the reasons for the gunfire, was

---

[35] This is not to imply that plaintiff *does* have a supervisory claim against either deputy.
Indeed, the court has no idea whether either deputy even had any measure of authority over the other.

[36] Doc. no. 1, Ex. A, ¶¶ 3, 4.

decedent the target, or a mere innocent bystander?  Was she a hostage?

These are not insignificant questions.  To decide the qualified immunity issues, the court must have access to sufficient facts to reconstruct the situation confronted by the deputies.  *See*, *e.g.*, *Sauzier v. Katz*, 533 U.S. 194, 202 (2001) (noting that the court must ask "whether it would be clear to a reasonable [deputy] that his conduct was unlawful *in the situation he confronted*") (emphasis supplied).  Again, pleadings must be "something more than an ingenious academic exercise in the conceivable." *Marsh*, 268 F.3d at 1037.

Moreover, the answers to some of these questions may be determinative of the constitutional provisions implicated.  If, for example, decedent was not an intended target, it is arguable that this case must be decided under the Due Process Clause of the Fourteenth Amendment, not the Search and Seizure Clause of the Fourth as made applicable to the states through the Fourteenth.[37]  *Compare Graham v. Connor*, 490 U.S. 386, 395 (1989) (noting that "*all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach"

---

[37] This possibility is rendered even more problematic in light of the fact that counsel for plaintiff pled her due process theory under the Fifth Amendment, not the Fourteenth.  *See id*. at ¶ 6.

under the Fourteenth Amendment) (emphasis in original) *with Green*, 434 F. Supp. 2d at 1175 (noting that "several circuits have concluded that no Fourth Amendment 'seizure' occurs where a hostage is wounded by bullets intended for his or her captor").  Plaintiff does not offer any assistance in this regard, stating simply that the conduct of which she complains "violated Amendment IV."[38]  *Cf. Hester*, 2006 WL 2547430, at * 4 (ordering repleader where the complaint left the court "[to] speculate what rights under the Fourteenth Amendment Defendants violated").  *See also Wilson v. Layne*, 526 U.S. 603, 615 (1999) (explaining that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established").

The proper course, therefore, is to order plaintiff to file a more definite statement of her claims against the deputies, and facts supporting such claims.[39]  This will also present plaintiff with an opportunity to correct Count II, so as to allege a violation of the Fourteenth Amendment rather than the Fifth, and to state clearly *what* right or rights were allegedly violated under *each* of the Amendments cited.

## PART SIX

---

[38] *Id*. at ¶ 2.

[39] As observed with respect to the Sheriff, the discussion in this opinion of the potential for supervisory liability should not be interpreted as an invitation to plead a claim for which there is no legal or evidentiary basis.  The onus is on plaintiff's counsel to determine, within the strictures of Fed. R. Civ. P. 11, what claims are properly brought, and against whom.

*Conclusion*

In accordance with the foregoing, plaintiff's claims against the Colbert County Sheriff's Department and the Colbert County Commission will be dismissed with prejudice. To the extent that the complaint seeks to sue Sheriff Ronnie May and his deputies in their official capacities, those claims are due to be dismissed with prejudice as well.

The remaining individual capacity claims against the Sheriff and both deputies must be refined considerably through an amended complaint. An appropriate order will be entered contemporaneously herewith.

DONE this 19th day of December, 2006.

_____
United States District Judge