# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **MATTIE LONG, as personal representative of Annie G. Holiday, deceased,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Civil Action No. 06-S-704-NW** |
| **COLBERT COUNTY SHERIFF'S DEPARTMENT,** *et al.*, | ) ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This marks the second occasion on which this civil rights action has come before the court on a motion to dismiss filed by defendants.[1]  For the reasons that follow, the motion will be granted in part and denied in part.

## I.  BACKGROUND

Plaintiff Mattie Long, in her capacity as personal representative of Annie G. Holiday, deceased, instituted this action pursuant to Alabama's wrongful death statute, Ala. Code § 6-5-410, and 42 U.S.C. § 1983.[2]  The court summarized the

---

[1] Doc. no. 22 (Defendants' Renewed Motion to Dismiss).  *See also* doc. no. 18 (Memorandum Opinion on Defendants' Motion to Dismiss); doc. no. 19 (Order Granting in Part and Denying in Part Defendants' Motion to Dismiss).

[2] Doc. no. 1 (Original Complaint).  *See also* doc. no. 21 (Amended Complaint).

factual allegations asserted in plaintiff's original complaint in a previous

memorandum opinion.  That summary is reproduced below.

> The complaint alleges that, on the day in question, the Colbert
> County Sheriff's office received a telephone call from some unidentified
> person who stated that an unknown individual had discharged a firearm
> in the area of the decedent's home.  In response to that call, some
> number of law enforcement officers were dispatched to the scene to
> investigate.  The pleading does not specifically state who was
> dispatched to the scene, but the only two deputies named as defendants
> in the caption are Dale Holley and Tommy Shea.  Ronnie May, the
> Colbert County Sheriff, also is named as a defendant, but nothing in the
> body of the complaint suggests that he accompanied his deputies on this
> particular call.
>
> In any event, whoever arrived on the scene — presumably
> Deputies Holley and Shea — allegedly entered onto decedent's property
> to investigate the reported disturbance.  Apparently unable to locate a
> suspect, the deputies called out to decedent, who was inside her house,
> but received no response. Thereupon, for reasons that are not articulated
> in the complaint, the deputies allegedly "proceeded to forcefully knock
> at the door to [decedent's] home and [again] failed to get a response."
> While plaintiff claims that decedent never threatened the deputies or
> fired upon them, for some unexplained reason they "withdrew from the
> porch to the cover [of a patrol car]."  Then, "without provocation from
> Plaintiff's decedent," the deputies allegedly "drew their weapons . . . and
> proceeded to open fire on the home."  After discharging an unstated
> number of rounds, the deputies are said to have entered decedent's home
> and found her "wounded from a gunshot," an injury that subsequently
> caused her death.[3]

Based on these factual averments, plaintiff asserted constitutional tort-based

causes of action against:  (1) the Colbert County Sheriff's Department; (2) Sheriff

---

[3] Doc. no. 18, at 5-7 (footnotes omitted) (bracketed alterations in original).

Ronnie May himself; (3) Deputies Holley and Shea; and (4) the Colbert County Commission.[4]  Each defendant responded by filing a motion to dismiss.[5]  After reviewing the arguments contained in the motions, the court granted the dismissal requests of the Colbert County Sheriff's Department and the Colbert County Commission.[6]  Additionally, the court dismissed all *official capacity* claims against Sheriff May and Deputies Holley and Shea, but required repleader of any *individual capacity* claims that plaintiff intended to assert against those parties.[7]  The court also ordered plaintiff to revise (and, if possible, reinforce) the factual allegations contained within her complaint:

> Factually, the amended complaint shall explain that the defendants are sued in their official [*sic*, should read *individual*] capacities, and further specify in *detail* the nature of [plaintiff's] claims against each defendant, differentiating clearly between them at all times.  Ideally, the complaint should contain a factual section preceding the actual counts that explains who the defendants are; why they are sued; and each act, omission, policy, or custom that forms the basis for a claim against each defendant. Because the court cannot perform a qualified immunity analysis based upon the slim and selective factual recitation contained in the original complaint, the amended version should disclose, to the extent presently possible, precisely what plaintiff believes to have happened on the night in question.  For example, it would be helpful to know whether plaintiff

---

[4] *See id*. at 8.

[5] Doc. no. 2 (Motion to Dismiss by Dale Holley and Tommy Shea); doc. no. 4 (Motion to Dismiss by Ronnie May); doc. no. 6 (Motion to Dismiss by the Colbert County Commission); doc. no. 8 (Motion to Dismiss by the Colbert County Sheriff's Department).

[6] Doc. no. 19, at 1.

[7] *Id*. at 1-2.

contends that there was some *reason* (justified or unjustified) that the deputies opened fire on decedent's house.  It is also critical that plaintiff make plain whether she alleges that the shooting of decedent was intentional or in some respect unintentional.  If plaintiff knows which deputy allegedly fired the gunshot that killed decedent, she should include that information.  Finally, each count must state not only the constitutional provision allegedly violated (*e.g.*, Fourth Amendment), but the specific right transgressed (*e.g.*, right to be free from the application of excessive force in the course of being subjected to a seizure).[8]

Plaintiff filed an amended complaint, albeit six days later than the court-ordered deadline for doing so.[9]  Although the revised pleading is by no means a textbook-quality example of a civil rights complaint, it is a marked improvement over plaintiff's initial filing.  Specifically, plaintiff's counsel provided the following new — or at the very least, clearer — factual allegations concerning the roles of the individual defendants and the events preceding her decedent's demise:

- "[A]t least one if not both of the deputies was not an official deputy but a volunteer who unlawfully had been allowed to respond and act [as] an active deputy by the Sheriff";[10]

- The deputies were "dispatched [to decedent's house] by their Supervisor, Sheriff May[,] who had the sole direction to direct the personnel in the Sheriff's department";[11]

- "Once the defendant deputies . . . were on decedent[']s property,

---

[8] *Id*. at 2-3 (footnote omitted) (emphasis in original).

[9] *Id*. at 2; doc. no. 21.

[10] Doc. no. 21, ¶ 2.

[11] *Id*.

they did not find anyone around or near the outside vicinity of decedents' [*sic*] home and did not see anyone or hear anyone firing a gun or other weapon";[12]

• The deputies proceeded to knock on decedent's door in an apparent attempt to question her, but decedent refused to answer the door and did not voluntarily allow the deputies access to her home;[13]

• "Finally, defendants Holley and Shea[,] receiving no response from inside the home[,] withdrew from the porch of the home and reportedly took cover behind the vehicle they had driven to decedent[']s home.  It is unknown at this time why [the deputies] decided to take this evasive action since no threat had been made by decedent or any other person";[14]

• "For reasons known only to defendants Holley and Shea[,] they opened fire upon and into the decedent[']s home," firing not just one shot, but "several rounds . . . without any return fire from the decedent or any other person or persons";[15] and

• The decedent ultimately was wounded not necessarily from "*a* gunshot,"[16] but "from *shots* fired by one or both of the defendants Holley and Shea."[17]

Based on these allegations, plaintiff repeats her claims against the individual

deputies, and also articulates why she feels Sheriff Ronnie May should be held liable

---

[12] *Id.* at ¶ 3.

[13] *Id.* at ¶¶ 5-6.

[14] *Id.* at ¶ 9.

[15] *Id.* at ¶ 11.

[16] Doc. no. 1, ¶ 3(d).

[17] Doc. no. 21, ¶ 12 (emphasis supplied).

for her decedent's death:  *i.e.*, "Sheriff Ronnie May exceeded his authority by allowing an unqualified and unauthorized person to take part in an official action of the Sheriffs' [*sic*] department."[18]  Defendants, on the other hand, vociferously object to plaintiff's amended complaint on multiple grounds, and also plead qualified immunity as an affirmative defense.  The court addresses each objection and defense below.

## II.  FAILURE TO TIMELY SUBMIT AN AMENDED COMPLAINT

Defendants assert that plaintiff's case should be dismissed as punishment for her attorney's failure to submit an amended complaint by the date ordered by the court.  While this court undoubtedly has the discretionary authority to dismiss a case in response to a plaintiff's willful noncompliance or contempt, *see*, *e.g.*, *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985), it remains true that "[d]ismissal of a case with prejudice is considered a sanction *of last resort*, applicable only in *extreme circumstances*." *Id*. (emphasis supplied).  Here, plaintiff's attorney corrected her error and filed an amended complaint within a relatively short time after the court-imposed deadline.  Given that, the most appropriate response is not the ultimate sanction of dismissal, but careful analysis of the resulting pleading to ensure substantive compliance with the relevant law.  Stated slightly differently, if plaintiff's

---

[18] *Id*. at ¶ 17.

case is to be dismissed, it should be for failure to state a claim upon which relief can be granted, rather than failure to retain a punctilious attorney.

## III.  FAILURE TO IDENTIFY AN "ENABLING STATUTE"

Defendants also complain that plaintiff "articulates no statutory basis for her purported federal constitutional claims."[19]  To clarify, the amended complaint explicitly invokes the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and also relies upon Alabama's Wrongful Death statute.  What it fails to mention is 42 U.S.C. § 1983, the so-called "procedural vehicle" that allows plaintiff to bring her constitutional claims before this court.  *Gernetzke v. Kenosha Unified School District No. 1*, 274 F.3d 464, 467 (7th Cir. 2001).  *See also generally Griffin v. City of Clanton*, 932 F. Supp. 1359, 1365 (M.D. Ala. 1996) ("When an individual seeks redress in the courts for a violation of his constitutional rights, he may not sue directly under the United States Constitution.  Rather, he must make his claim under 42 U.S.C. § 1983.").  As defendants see it, "averments relying on the United States Constitution are incomplete if they do not [expressly] implicate § 1983."[20]

This is a correct, but still wholly frivolous argument.  Defendants have

---

[19] Doc. no. 23 (Defendants' Brief in Support of Dismissal), at 17.

[20] *Id*.

produced not a single case in which the court dismissed a civil rights lawsuit due to the plaintiff's failure to rattle off the magic citation, "42 U.S.C. § 1983." Moreover, it is obvious and undisputed that plaintiff's constitutional causes of action rest upon § 1983. Dismissal of her claims for failure to reference that statute would presage a return to the dark days of common law pleading, when plaintiffs were required, at their peril, "to match facts to a legal theory, the 'form of action.'" *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). Thankfully, under the Federal Rules of Civil Procedure that now reign supreme, "[i]nstead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations." *Id*. *See also* Fed. R. Civ. P. 8(a). In an effort to implement that mandate, the court will overlook plaintiff's trivial failure to cite § 1983 in her amended pleading.

## IV. IMMUNITY FROM STATE LAW CLAIMS

Defendants devote several pages of their brief to an argument that "[p]laintiff's state law claims" must be dismissed on sovereign immunity and/or Eleventh Amendment grounds.[21] The court sees little need to address this contention, for it is clear that plaintiff's amended complaint is based exclusively upon federal

---

[21] *Id*. at 12.

constitutional torts.  There is a citation to Alabama's Wrongful Death statute, but that is simply because § 1983 does not provide a derivative right of action where, as here, the victim of the constitutional violation dies as a result of it.  *See Carringer v. Rodgers*, 331 F.3d 844, 849-51 (11th Cir. 2003).  To fill this statutory "gap," *id.* at 849, the Eleventh Circuit has held that state wrongful death laws may be relied upon as procedural mechanisms in federal court.  *See id*. at 849-51.  The substantive causes of action are, of course, still federal in nature:  only the mouthpiece is borrowed from the state.  *See id*.  *See also Robertson v. Hecksel*, 420 F.3d 1254, 1261 (11th Cir. 2005) (describing the situation as "bringing [a] wrongful death suit[] *under federal law*") (emphasis supplied).  Because the sole causes of action in plaintiff's amended complaint are federal in nature — *e.g.*, violation of the Fourth Amendment right of plaintiff's decedent to be free from the unreasonable application of deadly physical force — the fact that defendants may be immune from some or all state law causes of action is irrelevant.

## V.  FAILURE TO SATISFY THE HEIGHTENED PLEADING REQUIREMENT

As discussed above, the Federal Rules of Civil Procedure merely require that a complaint contain a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).
That said, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to
relief' requires more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, ___ U.S.
___, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Papasan v. Allain*, 478 U.S. 256, 286
(1986), and citing *Sanjuan v. American Board of Psychiatry & Neurology, Inc.*, 40
F.3d 247, 251 (7th Cir. 1994)) (bracketed alteration in *Twombly*).

Rather, the factual allegations of the complaint "must be enough to raise a right
to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965 (citations
omitted). *See also Marsh v. Butler County*, 268 F.3d 1014, 1037 (11th Cir. 2001) (*en
banc*) (noting that pleadings "'must be something more than an ingenious academic
exercise in the conceivable'") (quoting *United States v. Students Challenging
Regulatory Agency Procedures*, 412 U.S. 669, 688 (1973)); *Roe v. Aware Woman
Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (holding that the
complaint must "contain either direct or inferential allegations respecting all the
material elements necessary to sustain a recovery under some viable legal theory").
*But cf. Watts v. Florida International University*, 495 F.3d 1289, 1295 (11th Cir.
2007) (noting that "Rule 12(b)(6) does not permit dismissal of a well-pleaded
complaint simply because 'it strikes a savvy judge that actual proof of [the] facts

[alleged] is improbable'") (quoting *Twombly*, 127 S. Ct. at 1965) (bracketed text supplied); *Ziemba v. Cascade International*, *Inc.*, 256 F.3d 1194, 1198 n.2 (11th Cir. 2001) ("At the motion to dismiss stage, we accept all well-pleaded facts as true, and all reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

The requirement of a sufficient factual predicate for the legal allegations of the complaint is especially significant in the context of § 1983 suits against individual government officials, who may assert the defense of qualified immunity. *See*, *e.g.*, *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1248 (11th Cir. 2003) (noting that the qualified immunity analysis requires "careful examination of the facts at hand"). In that category of cases, the low bar of notice pleading has been inched upward.

> [W]hile Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing [her] complaint, this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out [her] claim. Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right.

*GJR Investments*, *Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998) (internal citations omitted) (bracketed text supplied). *See also*, *e.g.*, *Epps v. Watson*, 492 F.3d 1240, 1242 (11th Cir. 2007) ("Our circuit, however, imposes a heightened

pleading requirement in section 1983 claims against individuals and plaintiffs cannot rely on 'vague or conclusory' allegations."); *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (same).

## A.    The Claim(s) Against Sheriff Ronnie May

In the present case, plaintiff's original complaint was not sufficiently specific to meet the heightened pleading requirement, and the court minced no words in saying so. With respect to the joinder of Sheriff May as a defendant, the court remarked as follows:

> Sheriff Ronnie May is not even mentioned in the [body of the] complaint, either by name or by title. It appears, however, that he was not present when the alleged shooting took place, and certainly did not fire at decedent. Thus, it is plain that no liability could attach as a result of his personal participation in decedent's alleged killing. Moreover, the Sheriff is not vicariously responsible for the acts of his deputies merely because he is their employer.
>
> While plaintiff could conceivably seek to recover from the Sheriff under a theory of supervisory liability, the complaint, as written, contains no facts that would give rise to such a claim. Plaintiff does not, for example, allege that the Sheriff failed to train his deputies in a way that [would not have] led to decedent's death, that he acted with deliberate indifference toward decedent's rights in hiring unfit deputies, or that he promulgated some policy, or tolerated some custom, that resulted in decedent's shooting. The pleading utilized in this case gives new (and more literal) meaning to the phrase "failure to state a claim." Moreover, the complete absence of factual allegations renders impossible the court's task of deciding the qualified immunity question, and blatantly defies the Eleventh Circuit's heightened pleading

requirement for civil rights actions.[22]

Plaintiff has now revised her complaint, but defendants continue to assert that plaintiff flunks the heightened pleading test.  The court agrees with respect to the allegations against Sheriff May, but otherwise disagrees.

Plaintiff's amended complaint contains essentially two factual allegations related to Sheriff May.  First, plaintiff alleges that Sheriff May personally dispatched Deputies Holley and Shea to the house where plaintiff's decedent was killed.[23] Second, plaintiff alleges that "[a]t least one or both of the defendant deputies was not a proper person to be on call for the Sheriff's department since at least one if not both of the deputies was not an official deputy but a volunteer who unlawfully had been allowed to respond and act [as] an active deputy by the Sheriff."[24]  Based on these averments of fact, plaintiff concludes that Sheriff May allowed "an unqualified and unauthorized person to take part in an official action of the Sheriffs' [*sic*] department."[25]  In civil rights jargon, plaintiff *appears* to be asserting a § 1983 deliberate indifference claim analogous to one that is "premised upon the inadequacy of an official's review of a prospective applicant's record."  *Board of County*

---

[22] Doc. no. 18, at 20-21 (internal citations and footnotes omitted) (bracketed text supplied).

[23] Doc. no. 21, ¶ 2.

[24] *Id.*

[25] *Id*. at ¶ 17.

*Commissioners of Bryan County v. Brown*, 520 U.S. 397, 410 (1997).[26]

Even construed in this charitable manner, however, the new allegations amount to nothing more than "a formulaic recitation of the elements of a cause of action," *Twombly*, 127 S. Ct. at 1965, with virtually no supporting facts "to raise a right to relief above the speculative level." *Id.* The Supreme Court has held that this sort of pleading "will not do," even where no "heightened fact pleading of specifics" is mandated. *Id.* at 1965, 1974. And this minimalist style is doubly ill-suited for inadequate scrutiny-based deliberate indifference claims under § 1983, because "a finding of culpability [with such claims] simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Brown*, 520 U.S. at 412 (emphasis in original).

Since plaintiff's amended complaint discloses no factual background information about either of the deputies — except to say, somewhat cryptically and without elaboration, that at least one of them was "a volunteer" — there is nothing

---

[26] Needless to say, this uncertainty as to the precise claim that plaintiff intends to assert leaves the court quite apprehensive about the prospect of analyzing Sheriff May's qualified immunity defense. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999) (explaining that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established").

to substantiate her vague and conclusory allegation of unfitness for law enforcement duty. *See*, *e.g.*, *Epps*, 492 F.3d at 1242 (holding that "vague and conclusory" allegations are insufficient). In other words, the fact, if it be a fact, that one of the deputies was a volunteer does not necessarily lead to the conclusion that such person was unfit for law enforcement duty, much less "highly likely to inflict the *particular* injury suffered by" plaintiff's decedent. *Brown*, 520 U.S. at 410 (emphasis in original). *See also id.* (holding that "the risk from a single incident of inadequate screening of an applicant's background *is not 'obvious' in the abstract*; rather, *it depends upon the background of the applicant*") (emphasis supplied). *Cf. Marsh*, 268 F.3d at 1036 ("Owens alleges no facts from which a fact-finder could find that the Sheriff actually knew that her release policy posed a sufficiently substantial risk of serious harm to inmates."); *Bembry v. City of Tallahassee*, No. 4:05-CV-286-SPM, 2006 WL 1080676, at * 9 (N.D. Fla. Apr. 24, 2006) ("The two statements in Plaintiff's complaint simply do not meet this standard. There is no allegation that [the police officer who allegedly violated plaintiff's rights] had a criminal background or any other indication of 'propensity' to commit unlawful acts.").

Accordingly, the court finds that plaintiff's amended claims against Sheriff May still fail to clear the heightened pleading hurdle. *See GJR Investments*, 132 F.3d at 1367 ("Some factual detail in the pleadings is necessary to the adjudication of §

1983 claims."). Since plaintiff has twice failed to adequately plead a claim against Sheriff May — even after receiving explicit instructions from the court as to how a proper case might be pled — and did not request an additional opportunity to amend, Sheriff May will be dismissed as a party to this lawsuit. *See Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."). *Cf. Warth v. Seldin*, 422 U.S. 490, 501-02 ("[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.").

## B.     The Claims Against Deputies Holley and Shea

On the other hand, plaintiff's amended individual capacity claims against Deputies Holley and Shea are more than adequate. The court's trepidation regarding plaintiff's first statement of her claims against the deputies stemmed from the perception that she was "omit[ting] potentially critical details."[27] Accordingly, in an

---

[27] Doc. no. 18, at 24.

effort to obtain some much needed clarity, and to frame the issues to be decided, the

court raised the following questions:

> Why, for instance, did the deputies "withdr[a]w from the porch to the cover of the vehicle belonging to the Colbert County Sheriff's Department" if decedent "did not threaten" them?  Was another suspect in the area currently firing upon or otherwise threatening the deputies? Was *someone else* within decedent's home threatening them?  If not, why did the deputies see fit to fire upon decedent's house?  Were their alleged actions truly so brazen as to be without any logical explanation at all, or is plaintiff merely withholding that information?  Regardless of the reasons for the gunfire, was decedent the target, or a mere innocent bystander?  Was she a hostage?[28]

While defendants assert that plaintiff failed to answer even *one* of these

questions, a fair reading of the amended complaint suggests otherwise.  True, plaintiff

pleads ignorance to the first question — *i.e.*, why did the deputies retreat to the cover

of their vehicle prior to opening fire on the house? — but she does address many (if

not all) of the court's more specific inquiries.  Plaintiff alleges, for example, that "no

threat had been made by decedent *or any other person*" at the time the deputies began

firing at the house.[29]  Further, plaintiff avers that defendants "expended *several*

*rounds* of gunfire *without any return fire* from the decedent *or* any other person or

persons."[30]  Finally, by noting that "[d]ecedent proceeded to enjoy the peace and

---

[28] *Id*. at 24-25 (internal citations and footnotes omitted) (emphasis in original).

[29] Doc. no. 21, ¶ 9 (emphasis supplied).

[30] *Id*. at ¶ 11 (emphasis supplied).

comfort of her home while [d]efendants Holley and Shea unlawfully attempted to gain access to her," plaintiff makes rather plain that her decedent was no hostage.[31] These tidbits of information assist the court greatly in reconstructing the situation confronted by the deputies, and allow for a proper analysis of their qualified immunity defense.

Although it would have been helpful for plaintiff to also explain why the deputies retreated to their patrol car, and whether she believes her decedent to have been the target of the gunshots or a mere innocent bystander, the court does not expect her to plead facts to which she has no access, and did not intend its questions as an invitation for rank speculation. *See Malone v. Chambers County Board of Commissioners*, 875 F. Supp. 773, 791 (M.D. Ala. 1994) (holding that "the heightened [pleading] standard cannot be interpreted to require a plaintiff to plead information that is outside his control.").

## VI.  ENTITLEMENT TO QUALIFIED IMMUNITY

The court now must determine whether the remaining defendants, Deputies Holley and Shea, are entitled to qualified immunity.  The doctrine of qualified immunity protects governmental officials who are sued under 42 U.S.C. § 1983 for money damages in their individual capacities, but only so long as "their conduct

---

[31] *Id*. at ¶ 8.

violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See also*, *e.g.*, *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (same), *vacated on other grounds*, 536 U.S. 953 (2002), *reinstated on remand*, 323 F.3d 950 (2003). "While qualified immunity is typically addressed at the summary judgment stage of the case, the defense may be raised and considered on a motion to dismiss." *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).

A.     **The Preliminary Question:** *Were the deputies acting within the scope of their discretionary authority*?

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotations and citations omitted). *See also Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). Defendants make little effort to show that they were acting within their discretionary authority on the night in question, but plaintiff does not challenge their defense in that regard, either. Further, although plaintiff's amended complaint states that at least one of the deputies allegedly involved in the shooting death of her decedent was "a volunteer," it also states that Sheriff May himself enlisted their assistance and dispatched them to the scene where the shooting

took place.  *See*, *e.g.*, *Gerald v. Walker*, 78 So. 856, 858 (Ala. 1918) (recognizing that

an Alabama Sheriff may deputize a civilian and thereby confer upon that person the

power to make arrests); *Welch v. State*, 183 So. 879, 281 (Ala. App. 1938) ("Whether

these persons held commission as deputy sheriffs or not is immaterial.  They were

deputized by the chief deputy of Talladega county in aiding him in making an arrest

of the defendant.").  *Cf. Walden v. State*, 426 So. 2d 515, 516 (Ala. Crim. App. 1982)

("We see no reason why a [municipal] police officer who has been duly deputized [by

a sheriff] cannot validly execute a search warrant.").

Therefore, based on the limited facts at hand, the court concludes that Holley

and Shea were acting within their discretionary authority when the allegedly

unconstitutional conduct occurred.  "Once the defendant shows that he was acting

within his discretionary authority, the burden shifts to the plaintiff to show that

qualified immunity is not appropriate."  *Lee*, 284 F.3d at 1194.

**B.**    **The Pivotal Question:  *Are the deputies due qualified immunity*?**

The Supreme Court has devised a two-part test for determining whether

qualified immunity is appropriate.  The "threshold question" that must be asked by

the district court is whether the facts — or, in the context of a motion to dismiss under

Rule 12(b)(6), the allegations of the complaint — viewed "in the light most favorable

to the party asserting the injury," show that "the officer's conduct violated a

constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). *See also, e.g., Scott v. Harris*, ___ U.S. ___, 127 S. Ct. 1769, 1774 (2007). If the "threshold question" is answered affirmatively, the court will proceed to analyze the second aspect of the two-part inquiry: *i.e.*, "whether the right was clearly established." *Saucier*, 533 U.S. at 201. "This second inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Lee*, 284 F.3d at 1194 (quoting *Saucier*, 533 U.S. at 201). *But cf. Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (rejecting the Eleventh Circuit's "materially similar" facts requirement, and holding that "officials can still be on notice that their conduct violates established law even in novel factual circumstances").

1. **First prong of the *Saucier* test: *Did the deputies' conduct violate a constitutional right*?**

Determining whether Deputies Holley and Shea violated the constitutional rights of plaintiff's decedent requires an examination of two separate strands of constitutional jurisprudence. On the one hand, "[t]he Fourth Amendment's [guarantee of] freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Durruthy v. Pastor*, 351 F.3d 1080, 1093 (11th Cir. 2003) (internal quotations omitted). Hence, the Supreme Court has held that "*all* claims that law enforcement

officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). *See also Vaughan v. Cox*, 343 F.3d 1323, 1329 (11th Cir. 2003) ("Cox [a deputy sheriff] fired his weapon to stop Vaughan and Rayson, and one of those bullets struck Vaughan.  Because Vaughan was hit by a bullet that was meant to stop him, he was subjected to a Fourth Amendment seizure.") (footnote omitted).

On the other hand, not every individual who is shot by a law enforcement officer is "seized" within the meaning of the Fourth Amendment.  *See*, *e.g.*, *Troupe v. Sarasota County*, 419 F.3d 1160, 1166-67 (11th Cir. 2005) ("It is intervention directed at a specific individual that furnishes the basis for a Fourth Amendment claim.") (internal quotations and citation omitted); *Milstead v. Kibler*, 243 F.3d 157, 163-64 (4th Cir. 2001) (holding that where an officer shoots at a suspect with the intent to kill him, but misses and instead strikes an innocent bystander, "the innocent victim's injury or death is not a seizure that implicates the Fourth Amendment because the means of the seizure were not deliberately applied to the victim"; however, "where the officer deliberately directs his force against an innocent victim, believing him, although mistakenly, to be the suspect," the resulting seizure "implicates the Fourth Amendment"). *Accord Ciminillo v. Streicher*, 434 F.3d 461,

-22-

465 (6th Cir. 2006); *Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000) (same); *Childress v. City of Arapaho*, 210 F.3d 1154, 1156-57 (10th Cir. 2000) (same); *Medeiros v. O'Connell*, 150 F.3d 164, 169 (2d Cir. 1998) (same); *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791, 798 (1st Cir. 1990) (same).

The inapplicability of the Fourth Amendment to certain shootings by law enforcement officers does not mean, however, that victims of such shootings are without redress. To the contrary, the Eleventh Circuit "ha[s] held 'that a non-seizure Fourteenth Amendment substantive due process claim of excessive force survives *Graham* [*v. Connor, supra*].'" *Carr v. Tatangelo*, 338 F.3d 1259, 1271 (11th Cir. 2003) (quoting *Wilson v. Northcutt*, 987 F.2d 719, 722 (11th Cir. 1993)).

In the present case, plaintiff professes to have no knowledge of *why* Deputies Holley and Shea launched a volley of bullets into her decedent's house.[32]  For analytical purposes, then, two plausible reasons must be examined. First, it may have been that plaintiff's decedent was the deputies' actual target, meaning that the constitutional claims should be analyzed under the Fourth Amendment. Alternatively, the allegations can be read to suggest that plaintiff's decedent was merely an innocent occupant who happened to be in the line of fire, in which case the

---

[32] *See*, *e.g.*, doc. no. 21, ¶ 11 ("*For reasons known only to defendants Holley and Shea* they opened fire upon and into the decedent[']s home[.]") (emphasis supplied).

Fourteenth Amendment governs.  Deputies Holley and Shea are not due qualified

immunity under either reading of the amended complaint.

"[T]he reasonableness inquiry in an excessive force case [under the Fourth

Amendment] is an objective one:  the question is whether the officer's actions are

'objectively reasonable' in light of the facts and circumstances confronting him,

without regard to his underlying intent or motivation."  *Crosby*, 394 F.3d at 1333

(quoting *Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004)) (bracketing

supplied).  *See also*, *e.g.*, *Scott*, 127 S. Ct. at 1778 ("In determining the

reasonableness of the manner in which a seizure is effected, we must balance the

nature and quality of the intrusion on the individual's Fourth Amendment interests

against the importance of the governmental interests alleged to justify the intrusion.")

(internal quotations, citation, and alterations omitted).

> Similar to the standard used to evaluate Fourth Amendment excessive
> force claims, the standard used to evaluate substantive due process
> excessive force claims looks to a number of factors, including the need
> for force and the amount of force used, the extent of injury inflicted, and
> whether force was applied in a good faith effort to maintain or restore
> discipline or maliciously and sadistically for the very purpose of causing
> harm.

*Tatangelo*, 338 F.3d at 1271 (internal quotations and citation omitted).  *See also*, *e.g.*,

*Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

Viewing the allegations in plaintiff's amended complaint as true, the deputies'

-24-

actions in shooting into the home of plaintiff's decedent were not only objectively unreasonable, but shocking. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) ("[T]he cognizable level of executive abuse of power [i]s that which shocks the conscience."). Plaintiff's allegations support the inference that the deputies indiscriminately discharged multiple rounds of bullets into her decedent's home despite not having been provoked, threatened, or otherwise presented with any risk of harm.[33] It is exceedingly difficult to imagine the government's interest in firing blindly into a house occupied by an unknown number of persons — suspects or not — at least where, as here, the allegation is that no threat was made from within the house, and the deputies who were firing did so from an apparently safe location. *See Tatangelo*, 338 F.3d at 1271 (explaining that substantive due process claims require evaluation of "the need for force and the amount of force used"); *Lee*, 284 F.3d at 1198 (noting that the Fourth Amendment analysis also calls for an inquiry into "the need for the application of force").

It is true that the deputies were on the scene in response to a report of "shots fired," and therefore had every right to be cautious. Thus, if the allegations of the amended complaint suggested that the deputies merely overreacted to a provocative stimulus, the court would be obliged to take into account the tense nature of the

---

[33] *See id.* at ¶¶ 3, 6, 9, 10, 11.

situation they faced.  *See*, *e.g.*, *Graham*, 490 U.S. at 396 ("The 'reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").  As stated, however, the allegation here is that the deputies were not fired upon, spoken to, or threatened in any overt manner by any person, and yet, still positioned behind their patrol vehicle, shot up the house occupied by plaintiff's decedent.  The injury inflicted was grave: plaintiff's decedent was struck by one or more bullets, and died as a result.[34]  *See Tatangelo*, 338 F.3d at 1271 (recognizing "the extent of injury inflicted" as a relevant consideration for due process analysis); *Lee*, 284 F.3d at 1198 (noting that "the extent of the injury inflicted" is a pertinent factor in evaluating reasonableness under the Fourth Amendment).

Therefore, the court has little trouble concluding that these allegations, accepted as true for the time being, establish a violation of the Constitution.  If plaintiff's decedent was a suspect, she was nonetheless "neither fleeing nor threatening the officers or others," *Lundgren v. McDaniel*, 814 F.2d 600, 603 (11th Cir. 1989) (footnote omitted), and no other factors seem to justify the application of deadly force.  Under these circumstances, shooting her would be "an unreasonable seizure."  *Id*.  *See also Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("A police officer

---

[34] *Id*. at ¶¶ 12-13.

may not seize an unarmed, non-dangerous suspect by shooting him dead.").  Of course, there is also the possibility that the deputies had no desire to shoot plaintiff's decedent specifically, but nevertheless fired upon her house with generalized sadistic intent, or with considered and deliberate indifference as to the consequences.  If that is the case, the deputies' arbitrary use of deadly force would certainly be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8.  *See also*, *e.g.*, *Bublitz v. Cottey*, 327 F.3d 485, 490 (7th Cir. 2003) (holding that "deliberate indifference" may be enough to shock the conscience "when actual deliberation by a defendant was possible.") (citing *Lewis*, 523 U.S. at 851).  *Cf. Rucker v. Hartford County*, 946 F.2d 278, 282 (4th Cir. 1991) (stating that "it is possible to think of accidental shootings by police . . . that might be so reckless and irresponsible as to constitute 'inhumane' conduct 'literally shocking to the conscience,'" and giving the example of "shooting into a crowd at close range").

**2.     Second prong of the *Saucier* test:  *Did the law at the time of the incident clearly establish the unconstitutionality of the deputies' conduct*?**

Despite their use of deadly force, the deputies would be entitled to qualified immunity if, on the date of the incident, the law was not clearly established that the use of such force was unconstitutionally excessive.  *See generally Wilson v. Layne*,

-27-

526 U.S. 603, 617 (1999) (indicating that a plaintiff can demonstrate the existence of clearly established law not only by identifying "cases of controlling authority in their jurisdiction at the time of the incident," but also by reference to "a consensus of cases of persuasive authority"). *See also Hope*, 536 U.S. at 739 ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.") (internal quotations and citations omitted).

a.      **Contemporaneous interpretation of the Fourth Amendment**

Plaintiff alleges that Deputies Holley and Shea shot and killed her decedent on March 12, 2002.  By that date, it had long-since been clearly established that shooting a non-threatening civilian who was sitting quietly within a structure located on private property violates the Fourth Amendment, even if the victim is a suspected felon.  For example, in *Lundgren v. McDaniel*, 814 F.2d 600 (11th Cir. 1987), the Eleventh Circuit confronted a case in which two deputy sheriffs, noticing a broken window in a closed video store and suspecting that a burglary was in process, entered the store and immediately fired three shots at a "large shadow or silhouette rising up from behind a desk." *Id*. at 602.  As it turned out, the shadowy figure was the store owner, who had decided to sleep in the store to protect his wares after the window had been broken earlier in the day. *Id*.  The owner was killed by the gunshots. *Id*.

-28-

Although a pistol was found laying on the floor near his body, a jury apparently determined that "the officers were neither threatened by a weapon, nor appeared to be threatened by a weapon, nor were fired upon, but rather that the officers without provocation shot at a nondangerous suspect." *Id*. at 603.  Reviewing the resulting verdict in favor of the plaintiff, the Eleventh Circuit concluded that "shooting a suspected felon who was apparently neither fleeing nor threatening the officers or others was — even in *July*, *1983* — an unreasonable seizure and clearly violated fourth amendment law."  *Id*. (emphasis supplied) (footnote omitted).

The allegations in this case are not significantly different from the facts credited by the jury in *Lundgren*.  Indeed, if any point of distinction is to be made, it might be said that the allegations here paint a starker picture of a Fourth Amendment violation.  While the deputies in *Lundgren* were face-to-face with an unidentified suspect in a dimly lit room, Deputies Holley and Shea were safely positioned behind their patrol car some distance away from plaintiff's decedent, who was contained within her house and allegedly showing no interest in exiting or attacking the deputies.  Even though they had not been threatened or shot at, Holley and Shea opened fire on the house.  With *Lundgren* and other cases like it on the books, Deputies Holley and Shea could not have reasonably believed that their alleged actions were lawful.  Accordingly, to the extent that plaintiff's complaint suggests an

-29-

intentional seizure in violation of the Fourth Amendment, the deputies' motion for dismissal on qualified immunity grounds must be denied.

> **b.    Contemporaneous    interpretation    of    the    Fourteenth Amendment**

In *Jones v. City of Dothan*, 121 F.3d 1456 (11th Cir. 1997), the Eleventh Circuit made plain the standard for evaluating permissible applications of force under the Due Process Clause of the Fourteenth Amendment.   As the panel in *Jones* explained:

> the standard utilized to evaluate substantive due process excessive force claims looks to a number of factors, including [1] the need for force and the amount of force used, [2] the extent of injury inflicted, [3] and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Id*. at 1461 (internal quotations and citations omitted) (bracketed numbering supplied).  Recognizing that "this standard does not establish a 'bright line' that would readily alert [law enforcement] officers to a violation," the court in *Jones* held that qualified immunity should be denied only where application of the test would lead every reasonable law enforcement officer confronting the facts and circumstances alleged to conclude that the force utilized was excessive.  *Id*.  *See also generally Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1278 (11th Cir. 2004) ("While we have not traditionally called upon government officials to be

-30-

creative or imaginative in determining the scope of constitutional rights, neither are they free of the responsibility to put forth at least some mental effort in applying a reasonably well-defined doctrinal test to a particular situation.") (internal quotations and citations omitted).

As discussed *supra*, one construction of the amended complaint in this case (and the one on which plaintiff's substantive due process claim is based) is that the deputies did not consider plaintiff's decedent a suspect and did not specifically aim for her, but nonetheless fired indiscriminately into her house when no one within or without that residence had made any threats or fired upon them.  Although the court has not located any controlling cases with similar facts,[35] it simply defies reason to hold that a law enforcement officer who was aware of the standard set forth in *Jones* could believe himself justified in opening fire on a residence under these circumstances.  Assuming the allegations of the amended complaint are true, Deputies Holley and Shea did not need to resort to any force whatsoever — both because they were in a safe location, and because no one inside the house presented a known threat or flight risk — and yet they decided to use the most dangerous and deadly force

---

[35] *See Holloman*, 370 F.3d at 1278 ("[W]e do not just compare the facts of an instant case to prior cases to determine if a right is 'clearly established;' we also assess whether the facts of the instant case fall within statements of general principle from our precedents. . . . Our precedents would be of little value if government officials were free to disregard fairly specific statements of principle they contain and focus their attention solely on the particular factual scenarios in which they arose.").

available.   Moreover, since the deputies lacked any legitimate justification for

utilizing deadly force, the allegations here suggest that their conscious and considered

decision to do so was malicious and/or sadistic in nature.  *See generally Jones*, 121

F.3d at 1461.

In sum, when plaintiff's view of the disputed facts is credited, the deputies are

not entitled to qualified immunity because "the peculiar facts of this case are 'so far

beyond the hazy border between excessive and acceptable force that [the deputies]

had to know [they were] violating the Constitution even without [factually similar]

case law on point.'"  *Lee*, 284 F.3d at 1199 (quoting *Smith v. Mattox*, 127 F.3d 1416,

1419 (11th Cir. 1999)) (bracketed text supplied).

## VII.  THE ISSUE OF PUNITIVE DAMAGES

Defendants' final argument is that plaintiff's demand for punitive damages

must be stricken because both state law and the United States Constitution prohibit

the award of such damages against a state.  *Cf. Summit Medical Associates*, *P.C. v.*

*Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) ("[T]he Eleventh Amendment prohibits

suits against state officials where the state is, in fact, the real party in interest.").  In

so arguing, defendants apparently forget that the court already dismissed all official

capacity claims against the remaining defendants.[36]  Doing so alleviated the concerns

---

[36] Doc. no. 19.

about the permissibility of awarding punitive damages, because a state official sued in his *individual* capacity is distinguishable from the state itself.  *See McMillan v. Monroe County*, 520 U.S. 781, 785 n.2 (1997) (explaining that a suit against a government officer in his *official* capacity is the functional equivalent of a suit against the government entity that the officer serves); *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985) ("A victory in a *personal-capacity* action is a victory against *the individual defendant*, rather than against the entity that employs him.") (emphasis supplied).  When a plaintiff sues a state official in his individual capacity, she may be awarded punitive damages without offending either state law or the federal constitution.  *See*, *e.g.*, *Graham*, 473 U.S. at 167 n.13 (noting that "punitive damages are not available under § 1983 from a municipality, but *are* available in a suit against an official *personally*") (emphasis supplied).

## VIII.  CONCLUSION AND ORDER

For the foregoing reasons, defendants' renewed motion to dismiss is GRANTED insofar as it seeks dismissal of the claims against Sheriff Ronnie May, but is otherwise DENIED.  It is ORDERED that all claims against Sheriff Ronnie May be, and they hereby are, DISMISSED with prejudice.  The remaining defendants — Deputies Holley and Shea — are ORDERED to file answers to the amended complaint on or before **February 8**, **2008**.  A revised scheduling order will be entered

contemporaneously herewith.[37]   No additional motions to dismiss or motions for summary judgment may be filed before the end of the discovery process specified in the revised scheduling order.

DONE and ORDERED this 25th day of January, 2008.

_____
United States District Judge

---

[37] All of the deadlines set forth in the original scheduling order have expired.  *See* doc. no. 13 (Scheduling Order).